Curia, per Earle, J.
The question raised in argument, whether the plaintiff’s trap was a fixture or not, does not seem to be material to the case. If he had a right to put it in the river, in the exercise of his privilege of taking fish, which he enjoyed in common with the rest of the community, it was his property, and he had a right to remove it. — Cro. Car. 228. In that case, the public acquired no right to it; and if not a public nuisance, or other public injury, to be redressed by law, or abated by public force, the public could no more claim it or destroy it than an individual. Still it was not in legal parlance, the close of the plaintiff
Several other questions have been made in argument, on which the court does not conceive it necessary to express an opinion.— We need not decide whether the rule of the English law prevails here or not, nor whether there be, in effect, any difference between the rule there and in Pennsylvania. We need not decide whether the Congaree was originally navigable, or made so; nor whether, in one case, or in the other, the owners of the soil, on either side, would possess any exclusive right of fishery, and to what extent. The court is satisfied that the Congaree is now to be deemed and taken as a navigable stream. Whether the public is the actual owner of the soil, covered by water, in rivers of this description, or has merely a servitude for the public interest, as a highway by water, may deserve consideration; and would depend perhaps, on the grants, which we have not before us, or on the acts regulating the issuing of grants for lands, which have not been brought to our view.
Whether the land covered with water belongs to the owners of the adjoining lands, or to the public,it is a public river, {juris publici) and nuisances and impediments therein are liable to be punished by indictment. We have no doubt that the right of taking fish there, was common in equal degree to the whole community.— Whether an exclusive right could be prescribed for, is not necessary to be considered. The river being a public highway, all obstructions and impediments to the free passage and navigation thereof, would be public nuisances, and punishable by indictment, or liable to be abated.
*451 The question then is, was the trap, or line of traps, claimed by the plaintiff, such an obstruction and impediment, as to come within the description and meaning of a public nuisance. An obstruction to the passage of fish, may be a private nuisance where it affects a private right. An obstruction to the navigation would certainly be a public nuisance; and I incline to think, contrary to my first impression, that an obstruction to the free passage of fish in a public navigable river, is also a public nuisance, The question in this case, then, depends on this, could the plaintiff have been indicted for a public nuisance 1 And this depends more, perhaps, • on the provisions of the different acts of the legislature, than on other proof. The privilege of taking fish in our public rivers, by means of traps, has been immemorially exercised. I think it is now too late to hold, that a fish trap of itself is an obstruction and nuisance. This right is ¿recognized by very many acts of the legislature, beginning at an early period. On this river and some others, the legislature has adopted regulations concerning both navigation and the passage of fish. The act of 1827 is passed expressly to prevent obstructions to the passage of fish up several rivers, including the Congaree; appointing boards of commissioners of fish sluices, to have regular succession, every three years, to open and keep open sufficient sluices, for the free passage of fish.- This act recognizes and regulates the exercise of the right to erect traps, by making it a public nuisance to erect them within eighty yards of any dam, built by order of the State, to aid navigation. If indictable as a nuisance and punishable by a fine of twelve dollars, to put a trap within eighty yards of such dam, it would seem to follow that it is not of itself a nuisance, to put a trap more than eighty yards. And if a fish sluice be designated and opened, to obstruct which is indictable as a nuisance, it would seem to follow as an unavoidable conclusion, that the legislature did not consider a trap elsewhere as a nuisance.
The act of 1828, after fish sluices had been designated and opened In this part of the river, again recognized the. right to put traps, except within certain boundaries prescribed, near the dams at the head of the canal. But the act of 1829, making it indictable as a *452 larceny to steal fish out of a trap, with intent to defraud the owner thereof, more explicitly recognizes the right to put traps in the river, and regards both them and the fish taken in them, as private property. By the same act it is made a misdemeanor to put a trap in or near a boat sluice, so as to obstruct or injure the navigation. The plaintiff’s traps were not in or near any boat sluice ; nor were they an obstruction of any fish sluice. They therefore could not constitute a public nuisance, so as to be indictable; or liable to be abated by private force. The institution of boards of fish sluices on all the principal streams, every three years, who are required to designate periodically, and to open adequate sluices for the passage of fish, which are protected from all obstructions by indictment, with adequate penalty, supersedes any other proceeding, by the public, on account of impediments, by traps, to the free passage of fish.
Gregg & Black, for the motion.
Tradewell & Desaussure, contra.
The defendants were guilty of a trespass by destroying the plaintiff’s traps, and the verdict must stand. Their motion is refused.
O’Neam,, Richakeson, Butler and Evans, Justices, concurred.